# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **DANIELLE P. KILBY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10CV00066 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III; Ameenah Lloyd, Assistant Regional Counsel, Rafael Melendez, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

The plaintiff, Danielle P. Kirby, filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits pursuant to titles II and XVI of the Social Security Act

(the "Act"), 42 U.S.C.A. §§ 401-433, 1381-1383d (West 2003 & Supp. 2011). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Kilby filed for benefits on January 22, 2008, claiming disability since November 15, 2007, due to depression, anxiety, affective disorder and post-traumatic stress disorder.[1] Her claim was denied initially and upon reconsideration. Kilby received a video hearing before an administrative law judge ("ALJ"), during which Kilby, represented by counsel, and a vocational expert testified. The ALJ denied Kilby's claim, and the Social Security Administration Appeals Council denied her Request for Reconsideration. Kilby then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed and orally argued the issues. The case is ripe for decision.

II

Kilby was thirty-three years old when she filed for benefits, making her a younger person under the regulations. 20 C.F.R. §§ 404.1563(c) and 416.963(c) (2011). Kilby has completed high school and has past work experience as a cook,

---

[1] The record also indicates that Kilby suffered from a history of gastrointestinal disease and several minor injuries to her joints; however these conditions were not a basis for her application for benefits or this appeal.

production laborer/material handler, fast food line cook, and housekeeper. Kilby has not engaged in substantial gainful activity since November 2007.

Kilby has a long history of mental illness and has received disability benefits in the past. However, Kilby lost her benefits in 2000 when the Social Security Administration determined that she could work. Between 2000 and 2007 Kilby worked several jobs, primarily in the restaurant and retail industries.

In July 2006, prior to the relevant period, Kilby was admitted for three days to Twin County Regional Hospital after experiencing suicidal ideations and possible gastrointestinal bleeding. She reported breaking up with her fiancée the day before and increased family stressors, including a history of broken relationships, losing custody of her children, and job difficulties. She stated that she had not been taking her medications for an extended period because she was out of her prescriptions. Diagnostic testing was unremarkable. The hospital discharged Kilby in a stable condition with prescribed medications and recommendations for follow-up care.

On August 13, 2007, Kilby was admitted to the Twin County Regional Hospital psychiatric ward, complaining of worsening depression, suicidal ideation, and increased irritability. With a structured environment, monitoring, and medicative treatment, Kilby's condition stabilized. Upon discharge she was diagnosed with bipolar disorder and borderline personality disorder. Kilby was

advised to continue taking her prescribed medications and to schedule follow-up counseling. On September 17, 2007, she returned to Twin County under a temporary retention order, reporting that her medications had lost their effectiveness. Following adjustments to her medication and counseling, Kilby was discharged in a stable condition after three days.

Following these hospitalizations, Kilby was referred for psychiatric services at Mount Rogers Community Services and the Wythe Mental Health Clinic. On initial examination, she was diagnosed with bipolar disorder, cognitive disorder, post-traumatic stress disorder, and a noted history of polysubstance abuse in her teens. She reported that despite the "relapse" in her mental health, she was "feeling better" on increased doses of her medications. (R. at 361.) She denied side effects, homicidal or suicidal ideations, hallucinations, paranoia, or suspiciousness.

Kilby stated that she was "trying to work part time at a restaurant," and that she "had thought of re-applying for disability, but she realized that disability didn't pay enough or as much as even a part time job." (*Id.*) Kilby reported getting along well with others at work. (*Id.*) Kilby was assessed with a global assessment of

functioning ("GAF") score of sixty, indicating moderate to mild impairment in social and occupational functioning.[2]

From August 2007 through August 2008, Kilby continued to receive follow-up care from Maria C. Abeleda, M.D., a psychiatrist at Wythe Mental Health Clinic. Dr. Abeleda confirmed diagnoses of bipolar I disorder (mixed), post-traumatic stress disorder, and cognitive disorder (likely secondary to past substance abuse). Dr. Abeleda reported similar findings and diagnoses in November 2007, and in periodic follow-ups in January, March, and August of 2008. Dr. Abeleda's notes found that Kilby benefited from medicative treatment. Kilby was consistently found to be coherent, with intact memory, adequate insight, and judgment.

In November 2008, Dr. Abeleda completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) and opined that Kilby had poor-to-no ability to function in most categories. In March 2010, Dr. Abeleda completed a second assessment with substantially similar findings.

---

[2] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

From February 2008 through September 2009, Kilby additionally attended monthly counseling sessions with Nora King, a licensed clinical social worker. The sessions primarily discussed Kilby's interpersonal relationships with her family, stress management, and anger management. The record indicates that Kilby suffered exacerbated symptoms during times of increased stress related to family, relationships, or her children. Kilby additionally participated in group therapy on various occasions.

On December 2, 2009, Angelina Berry, Ph.D., a licensed clinical psychologist, performed a consultative examination of Kilby. Kilby reported experiencing symptoms including sleep and appetite disturbance, occasional sadness and crying, anger, irritability, restlessness, hyperactivity, and feeling hopeless, helpless, and worthless. She stated that she suffered from panic attacks consisting of paranoia, jitteriness, and hypervigilance, and that she had engaged in cutting approximately once per week. She reported an extensive medicative regimen, but noted that her in-person counseling sessions at Mt. Rogers had been terminated due to limited staff and because Kilby was "not currently in crisis." (R. at 423.)

Dr. Berry found Kilby's self-reports credible and diagnosed Kilby with bipolar disorder and borderline personality disorder. Dr. Berry assessed Kilby with a GAF score of 58, indicating moderate symptoms or limitations. In an assessment

-6-

Case 1:10-cv-00066-JPJ-PMS   Document 19   Filed 09/23/11   Page 6 of 12   Pageid#: 498

of Kilby's ability to do work-related activities, Dr. Berry indicated that Kilby would experience moderate limitations in making complex work decisions, social functioning, and interaction. Dr. Berry noted that Kilby's mental impairments would likely negatively impact her interactions and coping skills. Dr. Berry opined that Kilby had no restrictions in the ability to understand, remember, and carry out simple instructions, and to make judgments on simple work-related decisions.

Kilby's records were also reviewed by two state agency psychologists. Both concluded that Kilby was not significantly limited in her ability to understand, remember, and carry out simple instructions; remember work-like procedures; and make simple work-related decisions. They found mild limitations to Kilby's ability to perform daily activities, and moderate limitations in social functioning and concentration. Both state agency psychologists concluded that Kilby was able to work.

After reviewing Kilby's records, the ALJ determined that Kilby had severe impairments of affective disorder and anxiety, but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment. Taking into account Kilby's limitations, the ALJ determined that Kilby retained the residual functional capacity to perform light, unskilled work. The vocational expert testified that with Kilby's residual functional capacity, she could return to

her previous employment as a fast food line cook and housekeeper. Relying on this testimony, the ALJ concluded that Kilby was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Kilby argues that the ALJ's decision is not supported by substantial evidence because he erred in evaluating her mental impairments and failed to accord appropriate weight to the assessment of her treating physician. For the reasons below, I disagree.

### III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d) (2) (A).

In assessing DIB and SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment;

-8-

(3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a) (4), 416.920(a) (4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57

-9-

Case 1:10-cv-00066-JPJ-PMS   Document 19   Filed 09/23/11   Page 9 of 12   Pageid#: 501

(4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Kilby's current appeal focuses on her mental condition. She argues that the ALJ's decision was not supported by substantial evidence because the ALJ did not accord proper weight to the opinions of her treating physician of one year, Dr. Abeleda. A treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). However, the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

In the present case, the ALJ rejected Dr. Abeleda's assessments of the impact of Kilby's impairments on her ability to perform work-related functions. Dr. Abeleda opined that Kilby retained little to no ability to meet the mental demands of basic work due to her mental impairments, in all areas assessed under the agency form. The ALJ found that these conclusions were contradicted by Dr. Abeleda's own treatment records.

The ALJ's assessment of the evidence is supported by the record. Although the record establishes that Kilby sought treatment of both a therapist and a

-10-

Case 1:10-cv-00066-JPJ-PMS   Document 19   Filed 09/23/11   Page 10 of 12   Pageid#: 502

psychiatrist to treat her medical impairments over a period of years, the record also shows that her conditions improved with treatment. Additionally, even though Dr. Abeleda saw Kilby consistently, these appointments were dispersed over several month intervals, and there are no notations in the record that indicate the difficulties or level of difficulties that would require the occupational and daily living adjustments reflected in Dr. Abeleda's assessment form. Kilby's GAF score showed, at worst, only moderate limitations. Finally, treating sources discontinued Kilby's counseling treatments when they determined that she was no longer in crisis. Coupled with Kilby's own reports of improved symptoms and relatively functional daily living activities, I find that substantial evidence supports the ALJ's determination that the overall record contradicts Dr. Abeleda's extremely restrictive work-function assessments.

Moreover, the ALJ took Dr. Abeleda's opinions into account to the extent that Dr. Abeleda's notes were consistent with the other objective medical evidence on record. Both Dr. Berry and the state agency reviewing psychologists agreed with Dr. Abeleda in their diagnoses of Kilby's conditions and the potential for effective treatment. The reviewing doctors also noted similar capacities in Kilby's overall affect and mental abilities. These reviewing doctors granted restrictions in Kilby's ability to tolerate work-place stressors and social interaction that were consistent with Dr. Abeleda's treatment notes. The significant difference in the

opinions was only in the finding that Kilby, while acknowledging that she suffers from severe mental impairments, remains capable of performing restricted work.

Overall, I find that the ALJ provided an adequate assessment of Kilby's mental limitations. The ALJ accommodated Kilby's restrictions on social interactions, her impairments in concentration, persistence, and pace, and addressed Kilby's specific functional limitations. The occupations suggested by the vocational expert take into account Kilby's limitations in these areas, and thus the ALJ's decision was supported by substantial evidence.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: September 23, 2011

/s/ James P. Jones
United States District Judge